■ RMP CAPITAL CORP., Appellant, v VICTORY JET, LLC, et al., Respondents. [32 NYS3d 231]—

In an action, inter alia, to recover damages for breach of a factoring and security agreement and to recover on several guaranties, the plaintiff appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Suffolk County (Whelan, J.), entered February 14, 2014, as, upon an order of the same court dated April 12, 2013, awarding it summary judgment on the issue of liability on the third and sixth causes of action, and upon a decision of the same court dated September 11, 2013, made after a nonjury trial on the issue of damages, is in favor of the plaintiff and against the defendants Jeff Erickson, Christopher Barnes, and Roger Maldonado in the principal sum of only $75,199.92, which amount includes an award of only $67,399.92 for "factoring fees," and awarded it the sum of only $40,657 for attorneys' fees.

Ordered that the judgment is modified, on the facts, (1) by increasing the award for attorneys' fees from the sum of $40,657 to the sum of $44,112.94, and (2) by deleting the provision thereof awarding factoring fees in the principal sum of $67,399.92; as so modified, the judgment is affirmed insofar as appealed from, with one bill of costs payable to the plaintiff by the defendants Jeff Erickson, Christopher Barnes, and Roger Maldonado, and the matter is remitted to the Supreme Court, Suffolk County, for a new determination of the amount of the award of factoring fees in accordance herewith and the entry of an amended judgment.

The plaintiff and the defendant Victory Jet, LLC (hereafter Victory Jet), entered into a Factoring and Security Agreement

dated October 13, 2010, and an Addendum thereto dated October 13, 2010, as amended by an Amendment of the Factoring and Security Agreement dated April 27, 2011 (hereinafter the Factoring Agreement). Pursuant to the Factoring Agreement, the plaintiff agreed to purchase Victory Jet's account receivables, through the purchase of invoices from Victory Jet at a purchase price of 45% of the face amount of each invoice, and then collect the entire amount of the invoices from Victory Jet's account debtors. As the plaintiff advanced to Victory Jet the purchase price of the accounts it purchased, Victory Jet was obligated to pay the plaintiff certain fees, such as factoring fees and out-of-pocket expenses as set forth in the Factoring Agreement. Victory Jet was required to pay to the plaintiff the factoring fees every month until the invoices the plaintiff purchased from Victory Jet were repaid in full and the purchased accounts were closed. The individual defendants, Jeff Erickson, Christopher Barnes, and Roger Maldonado (hereinafter together the defendants) were guarantors of the obligations of Victory Jet pursuant to the Factoring Agreement. Victory Jet subsequently defaulted under the Factoring Agreement by, inter alia, failing to pay its monthly factoring fees and declaring bankruptcy. By letter dated October 11, 2011, the plaintiff accelerated all amounts due under the Factoring Agreement, and demanded immediate full payment thereof from the defendants. The defendants failed to comply with the October 11, 2011 demand.

The plaintiff commenced this action to recover the cost of the unpaid face amounts of the invoices it purchased from Victory Jet, the factoring fees which continued to accrue based upon the amounts that remained outstanding, and attorneys' fees. In an order dated April 12, 2013, the Supreme Court awarded summary judgment to the plaintiff on the issue of liability on the third and sixth causes of action. After a nonjury trial on the issue of damages, the court determined that the plaintiff failed to establish the unpaid face amount of the invoices it purchased from Victory Jet, and awarded the plaintiff the sum of $75,199.92 in damages, representing the commitment fee of $7,500, wire fees in the sum of $300, and factoring fees in the sum of $67,399.92. With respect to the award of factoring fees, the court determined that the Factoring Agreement was terminated as of October 11, 2011, and as a result, so was the accrual of factoring fees. The court also awarded attorneys' fees to the plaintiff, after reducing the hourly rates and after reducing the hours expended by 25%, in the amount of $40,657. The plaintiff appeals, contending that the damages and attorneys' fees awards were incorrectly limited as indicated.

In reviewing a determination made after a nonjury trial, the power of the Appellate Division is as broad as that of the trial court and it may render the judgment it finds warranted by the facts, taking into account that in a close case the trial judge had the advantage of seeing and hearing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Novair Mech. Corp. v Universal Mgt. & Contr. Corp.*, 81 AD3d 909, 909-910 [2011]; *Baygold Assoc., Inc. v Congregation Yetev Lev of Monsey, Inc.*, 81 AD3d 763, 764 [2011], *affd* 19 NY3d 223 [2012]).

It is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered (*see Berley Indus. v City of New York*, 45 NY2d 683, 686 [1978]; *Haughey v Belmont Quadrangle Drilling Corp.*, 284 NY 136 [1940], *amended* 286 NY 584 [1941]; *Palsgraf v Long Is. R.R. Co.*, 248 NY 339 [1928]; *see also J.R. Loftus, Inc. v White*, 85 NY2d 874, 877 [1995]; *G & A Moving & Stor. Co. v Computer Assoc. Intl.*, 233 AD2d 479, 479 [1996]). Thus, a plaintiff is required to sustain his or her burden to demonstrate actual damages (*see J.R. Loftus, Inc. v White*, 85 NY2d at 874; *Ashton v McLenithan*, 224 AD2d 749 [1996]; *Davis v Mutual of Omaha Ins. Co.*, 167 AD2d 714 [1990]). In order to be entitled to a verdict, or a judgment for damages for breach of contract, the plaintiff must lay a basis for a reasonable estimate of the extent of its harm (*see G & A Moving & Stor. Co. v Computer Assoc. Intl.*, 233 AD2d at 479; 5 Corbin on Contracts § 1020 at 124). Contrary to the plaintiff's contention, the Supreme Court's determination that the plaintiff failed to meet its burden of proof with respect to the cost of the unpaid face amount of the invoices it purchased from Victory Jet is supported by the record, and we discern no reason to disturb it.

However, we agree with the plaintiff's contention that the Supreme Court incorrectly determined that factoring fees stopped accruing as of October 11, 2011. "[W]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. Furthermore, [i]nterpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument. A court should not imply a term which the parties themselves failed to

include" (*Westchester County Corr. Officers Benevolent Assn., Inc. v County of Westchester*, 99 AD3d 998, 999 [2012] [internal quotation marks and citation omitted]). Here, the plain, unambiguous terms of the Factoring Agreement, particularly sections 20.3.1 and 20.3.2 thereof, provide that the factoring fees continue to accrue based upon the unpaid invoices that remained outstanding. Thus, even if the October 11, 2011 letter can be deemed as an election by the plaintiff to terminate the subject agreement, those fees continued to accrue. Accordingly, the matter must be remitted to the Supreme Court, Suffolk County, for a new determination of the award of factoring fees, consistent herewith.

We also agree that the Supreme Court's award of attorneys' fees should be increased. " 'It is well settled in New York that a prevailing party may not recover attorneys' fees from the losing party except where authorized by statute, agreement or court rule' " (*Great Neck Terrace Owners Corp. v McCabe*, 101 AD3d 944, 946 [2012], quoting *U.S. Underwriters Ins. Co. v City Club Hotel, LLC*, 3 NY3d 592, 597 [2004]; *see TAG 380, LLC v ComMet 380, Inc.*, 10 NY3d 507, 515-516 [2008]). However, the award of attorneys' fees, whether pursuant to agreement or statute, must be reasonable and not excessive (*see Miller Realty Assoc. v Amendola*, 51 AD3d 987, 990 [2008]; *RAD Ventures Corp. v Artukmac*, 31 AD3d 412 [2006]). A reasonable attorney's fee is commonly understood to be a fee "which represent[s] the reasonable value of the services rendered" (*NYCTL 1998-1 Trust v Oneg Shabbos, Inc.*, 37 AD3d 789, 790 [2007]; *see Matter of Gamache v Steinhaus*, 7 AD3d 525, 527 [2004]). In general, factors to be considered include "(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved" (*Diaz v Audi of Am., Inc.*, 57 AD3d 828, 830 [2008]; *see Matter of Freeman*, 34 NY2d 1, 9 [1974]; *Matter of Gaffney v Village of Mamaroneck*, 21 AD3d 1032 [2005]; *Steiger v Dweck*, 305 AD2d 475 [2003]). Moreover, the determination must be based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community (*see Matter of Gamache v Steinhaus*, 7 AD3d 525, 527 [2004]; *Gutierrez v Direct Mktg. Credit Servs.*, 267 AD2d 427, 428 [1999]). The determination of a reasonable attorney's fee is left to the sound

discretion of the trial court (*see Miller Realty Assoc. v Amendola*, 51 AD3d at 990).

Here, the Supreme Court properly reduced the hourly rates submitted by the plaintiff for several of the attorneys and a paralegal who had worked on this matter, to reflect the prevailing hourly rate for the work performed in the community. However, the court should not have reduced the hourly rates submitted for attorneys Jerome Reisman and Joseph Capobianco, partners at their law firm, who each had more than 30 years of experience. The hourly rates submitted for Reisman and Capobianco, $415 and $400, respectively, reflect the prevailing hourly rate of attorneys in the community with their experience (*see Leser v U.S. Bank N.A.*, 2013 WL 1952306, 2013 US Dist LEXIS 33168 [ED NY, May 10, 2013, No. 09-CV-2362 (KAM/MDG)]). We therefore increase the attorneys' fees award to reflect those hourly rates, as indicated, as well as correct certain computation errors.

Contrary to the plaintiff's contention, the Supreme Court's across-the-board 25% reduction in the hours expended by the plaintiff's attorneys on the case, due to the use of block billing, including vague and nonspecific billing entries, and the nature of this lawsuit, was a provident exercise of discretion (*see Matter of Silverstein v Goodman*, 113 AD3d 539 [2014]; *Bobrow Palumbo Sales, Inc. v Broan-Nutone, LLC*, 549 F Supp 2d 274 [ED NY 2008]). Eng, P.J., Hall, Sgroi and Duffy, JJ., concur.